Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan H. Lefkow | Sitting Judge If Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 6704 | **DATE** | 5/30/2003 |
| **CASE TITLE** | Lear Corporation vs. Johnson Electric Holdings Limited, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Motion of defendant Johnson Electric to dismiss [12-1] is granted. The Court dismisses the Count I duty to indemnify claim without prejudice under Rule 12(b)(1). The Count II duty to defend claim is dismissed with prejudice under Rule 12(b)(6). Status hearing is set for 6/30/03 at 9:30 a.m.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | 4 | Document Number |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | JUN 0 2 2003 | |
| | Notified counsel by telephone. | | date docketed | 29 |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 5/30/2003 | |
| | | | date mailed notice | |
| MD | courtroom deputy's initials | | MD | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| LEAR CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 02 C 6704 |
| | ) | Judge Joan H. Lefkow |
| JOHNSON ELECTRIC HOLDINGS | ) | |
| LIMITED and NEVADA BOND | ) | |
| INVESTMENT CORP. II, | ) | |
| | ) | |
| Defendants. | ) | |

DOCKETED
JUN 0 2 2003

## MEMORANDUM OPINION AND ORDER

On August 28, 2001, three residents of Columbus, Mississippi, brought suit in a Mississippi state court against, among others, Lear Corporation (plaintiff in this action, hereinafter referred to as "Lear"), Johnson Electric Holdings Limited (a defendant in this action, hereinafter referred to as "Johnson Electric") and affiliates of Nevada Bond Investment Corp. II (a defendant in this action, hereinafter referred to as "Nevada Bond") under theories of personal injury and property damage purportedly caused by environmental contamination from an automobile parts manufacturing facility located in Columbus (the "Mississippi Action"). On September 19, 2002, Lear filed the instant action against Johnson Electric and Nevada Bond seeking a declaratory judgment that (1) Johnson Electric must defend and indemnify Lear in the Mississippi action (Count I) and (2) Lear is not obligated to defend or indemnify Johnson Electric in the Mississippi action (Count II), or, in the alterative, (3) Nevada Bond must defend



and indemnify Lear and that Lear is not obligated to defend or indemnify Nevada Bond (Count III).

Before the court is Johnson Electric's motion to dismiss Lear's Complaint under Rules 12(b)(1) and 12(b)(6), Fed. R. Civ. P. Lear is a Delaware corporation with its principal place of business in Michigan. Johnson Electric is a Bermuda corporation with its principal place of business in Hong Kong. Nevada Bond is a Nevada corporation with its principal place of business in Connecticut. The amount in controversy exceeds $75,000. The court, therefore, rests its jurisdiction in 28 U.S.C. § 1332 (diversity). For the reasons stated below, Johnson Electric's motion to dismiss is granted.

## MOTION TO DISMISS STANDARDS

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) challenges the court's subject matter jurisdiction. In determining whether subject matter jurisdiction exists, the court must accept all well pleaded facts alleged in the complaint, and it draws all reasonable inferences from those facts in the plaintiff's favor. *Sapperstein v. Hager*, 188 F.3d 852, 855 (7th Cir. 1999); *Meridian Rail Prods. Corp. v. Amsted Indus., Inc.*, No. 02 C 3708, 2002 WL 31103479, at *2 (N.D. Ill. Sept. 18, 2002). "When evidence pertinent to subject matter jurisdiction has been submitted, however, 'the district court may properly look beyond the jurisdictional allegations of the complaint . . . to determine whether in fact subject matter jurisdiction exists.'" *Sapperstein*, 188 F.3d at 855, quoting *United Transp. Union v. Gateway W. Ry. Co.*, 78 F.3d 1208, 1210 (7th Cir. 1996) (internal citations omitted).

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) challenges the sufficiency of the complaint for failure to state a claim upon which relief may be granted.

2

*General Elec. Capital Corp.* v. *Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997). Dismissal is appropriate under Rule 12(b)(6) only if it appears beyond a doubt that the plaintiff can prove no set of facts in support of its claim that would entitle it to relief. *Conley* v. *Gibson*, 355 U.S. 41, 45-46 (1957); *Kennedy* v. *Nat'l Juvenile Det. Assoc.*, 187 F.3d 690, 695 (7th Cir. 1999). In ruling on a 12(b)(6) motion, the court accepts as true all well pleaded facts alleged in the complaint, and it draws all reasonable inferences from those facts in the plaintiff's favor. *Dixon* v. *Page*, 291 F.3d 485, 486 (7th Cir. 2002); *Jackson* v. *E.J. Brach Corp.*, 176 F.3d 971, 977 (7th Cir. 1999).

## BACKGROUND

On March 16, 1999, Lear entered into a Stock Purchase Agreement (the "UTA Agreement") with Nevada Bond to purchase all of the outstanding capital stock of UT Automotive, Inc. ("UT Automotive"). (Compl. ¶ 7.) Soon thereafter, substantially all of the assets and liabilities of UT Automotive were placed into a separate subsidiary corporation called Motors Acquisition Corporation ("Motors Acquisition"). (Compl. ¶ 8.) Lear then sold Motors Acquisition to Johnson Electric pursuant to a Stock Purchase Agreement dated May 7, 1999 (the "Johnson Agreement"). (*Id.*) Johnson Electric was aware of Lear's purchase of UT Automotive from Nevada Bond, as well as the terms of the UTA Agreement. (These two agreements were apparently modeled after one another).

Lear's claims are based both on the UTA Automotive agreement in which Lear purchased stock and assets from Nevada Bond and the May 1999 Johnson Agreement between Lear and

Johnson Electric. Under Section 10.2 of the Johnson Agreement[1], Johnson Electric is obligated

to indemnify Lear pursuant to Section 10.2, which provides, in pertinent part, as follows,

> From and after the Closing Date, [Johnson Electric] shall indemnify and hold
> harmless [Lear] . . . from and against any and all Covered Liabilities incurred by
> or asserted against [Lear] in connection with or arising from . . . (iii) any Covered
> Liability of the Company or any of the Subsidiaries or arising out of or in
> connection with the Motors Business, as heretofore, currently or hereafter owned
> or conducted, as the case may be, including, without limitation, any Covered
> Liability based on negligence, gross negligence, strict liability or any other theory
> of liability, whether in law (whether common or statutory) or equity; provided,
> however, that there shall be excluded from the foregoing indemnity obligation . . .
> Covered Liabilities with respect to Retained Liability.

Johnson Agreement § 10.2 (emphasis added).

Section 10.3 of the Johnson Agreement provides the circumstances in which Lear shall

indemnify Johnson Electric. It provides as follows,

> From and after the Closing Date, [Lear] shall indemnify and hold harmless
> [Johnson Electric] . . . from and against any and all Covered Liabilities incurred
> by or asserted against [Johnson Electric] in connection with or arising from . . .
> (ii) the Retained Liabilities . . . .

*Id.* at § 10.3 (emphasis added).

The term "Covered Liabilities" as used in the Johnson Agreement is defined in Article I

to be

> any and all debts, losses, liabilities, claims, damages, fines, penalties, obligations,
> payments (including, without limitation, those arising out of any demand,
> assessment, settlement, judgment or compromise relating to any Action), costs
> and expenses (including, without limitation, costs and expenses of investigation
> and fees and disbursements of counsel and other experts), mature or unmature,
> absolute or contingent, accrued or unaccrued, liquidated or unliquidated, known

---

[1]While the Johnson Agreement was not attached to Lear's Complaint, it is attached to Johnson Electric's motion to dismiss, mentioned throughout Lear's Complaint and is central to Lear's claim. The court, therefore, may still consider the Johnson Agreement on this motion to dismiss. *E.g.*, *188 LLC* v. *Trinity Indus., Inc.*, 300 F.3d 730, 735 (7th Cir. 2002); *Venture Assocs. Corp.* v. *Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1992).

or unknown, including, without limitation, any of the foregoing arising under, out of or in connection with any Environmental Liabilities or any Action, order or consent decree of any governmental entity or award of any arbitrator of any kind, or any law, rule, regulation, contract, commitment or undertaking.

*Id.*, art. I.

The term "Retained Liability," for which Lear remained responsible and Johnson Electric was not, is defined in Section 2.7 of the Agreement listed and discussed *infra*. The closing date mentioned throughout the Johnson Agreement was March 16, 1999, the date of the sale from Nevada Bond to Lear.

The Mississippi action, filed on August 28, 2001, claims that Lear, Johnson Electric and affiliates of Nevada Bond, as current or past owners of an "automobile manufacturing facility" in Columbus, Mississippi, knew or should have known that the "use and storage of hazardous substances at the [manufacturing facility] have contaminated the soil and drinking water of the residents, . . . light industrial business in the area, as well as the environment in general." (Compl. ¶ 12.) Plaintiffs in the Mississippi Action seek compensatory and punitive damages against all defendants for negligence, gross negligence, negligence per se, public nuisance, strict liability, failure to warn, failure to use alternate processes, fraudulent misrepresentation, outrage, trespass, strict product liability, and ultra-hazardous liability. (*Id.*)

Lear argues in this case that the Mississippi Action is either a "Covered Liability" under the terms of the Johnson Agreement for which Johnson Electric must both indemnify and defend Lear or a "Retained Liability" for which Nevada Bond is responsible under the UTA Agreement. On September 21, 2001, Lear informed Johnson Electric that the Mississippi Action involved a "Covered Liability" under Section 10.2 of the Johnson Agreement and accordingly tendered

5

defense of the matter to Johnson Electric. (Compl. ¶ 14.) On October 19, 2001, Johnson Electric responded that it would not defend or indemnify Lear in the Mississippi Action. (Compl. ¶ 15.)

## DISCUSSION

Lear brings this suit seeking a declaration that Johnson Electric has a duty to indemnify and defend it in the Mississippi Action while Lear has no duty to either indemnify or defend Johnson Electric. In the alternative, Lear maintains that Nevada Bond has a duty to indemnify and defend it in the Mississippi Action and that Lear has no duty to indemnify or defend Nevada Bond. Johnson Electric moves to dismiss the claims against it on grounds that (1) the duty to indemnify claims should be dismissed without prejudice under Rule 12(b)(1) for lack of ripeness and (2) the duty to defend claims have no basis in the contract at issue and should be dismissed for failure to state a claim under Rule 12(b)(6).

### A.  Duty to Indemnify

Under the general rule, a declaratory judgment seeking indemnification rights is not ripe for adjudication until the underlying law suit has first determined and defined liability. *E.g.*, *Nationwide Ins. v. Zavalis*, 52 F.3d 689, 693 (7th Cir. 1995) ("[T]he duty to indemnify is not ripe for adjudication until the insured is in fact held liable in the underlying suit."); *Grinnell Mut. Reins Co. v. Reinke*, 43 F.3d 1152, 1154 (7th Cir. 1995) ("[T]he duty to indemnify [i]s unripe until the insured has been held liable."); *Travelers Ins. Cos. v. Penda Corp.*, 974 F.2d 823, 833 (7th Cir. 1992) ("[T]he determination of whether [defendant] has a duty to indemnify is not ripe until the underlying litigation is terminated."); *Taco Bell Corp. v. Continential Cas. Co.*, No. 01 C 0438, 2003 WL 124454, at *3 (N.D. Ill. Jan. 13, 2003). This is the rule applied in Delaware, which is the substantive law governing the parties' contractual relationship. *See, e.g.*,

*Dana Corp.* v. *LTV Corp.*, 668 A.2d 752, 756 (Del. Ch. 1995) ("Courts have declined to enter a declaratory judgment with respect to indemnity until there is a judgment against the party seeking it."); *aff'd*, 670 A.2d 1337 (Del. 1995).

Johnson Electric argues this general rule should be applied in this case, as Lear's indemnification claim is premature because liability has not been established in the underlying action and the existence, source and nature of any contamination giving rising to liability has not been determined. Lear disagrees and states that this rule is not "absolute," *see Bankers Trust Co.* v. *Old Republic Ins. Co.*, 959 F.2d 677, 680 (7th Cir. 1992); *American Home Assurance Co.* v. *Swanson*, No. 93 C 383, 1993 WL 155501, at *3 (N.D. Ill. May 10, 1993), particularly where, as Lear alleges is the case here, the issues to be decided in the declaratory action are based in contract and different from the issues to be decided in the underlying litigation.

The parties' respective arguments are based on differing views of their obligations under the Johnson Agreement, requiring the court to undertake an examination of Section 2.7, the relevant portion of the agreement dealing with "Retained Liabilities."[2] If, as Johnson Electric maintains, responsibility for indemnification is dependent on issues to be decided in the Mississippi Action (*i.e.*, whether that action relates to a Retained Liability), then the claim that this case is unripe would be persuasive, as the source and nature of any contamination giving rise to liability would have to be determined in the underlying suit, not here. However, if Lear's interpretation is correct that the contract governs notwithstanding the facts, then no liability determination in the Mississippi Action would be necessary for this court to decide the

---

[2]The court notes that neither party argues that any of the contractual provisions are ambiguous.

indemnification issue and Lear's argument that this issue is ripe to be decided now would have at least colorable merit.

The term "Retained Liability" is defined in Section 2.7 of the Johnson Agreement. Section 2.7 provides, in pertinent part,

> Notwithstanding anything to the contrary herein, [Lear] shall remain liable for, and [Lear] agrees to indemnify and hold harmless [Johnson Electric] and each of the other Buyer Indemnified Parties, in accordance with the provisions set forth in Section 10.3, from and against, any and all Covered Liabilities incurred by or asserted against [Johnson Electric], whether or not a claim is asserted prior to the Closing Date (except as provided in Section 2.7(b) and 2.7(c) hereof), arising from or relating to:
> (a) any Environmental Liability to the extent such liability arises out of or in connection with any act or omission that occurred, or condition that existed, relating to a <u>discontinued operation</u> which was discontinued as of the UTA Closing Date or <u>assets</u> no longer, as of the UTA Closing Date, used by UTA or any of the Subsidiaries in the conduct of the Motors Business;
> (b) any Environmental Liabilities to the extent (i) such liability arises out of or in connection with any act or omission that occurred, or condition that existed, relating to an operation business of UTA, (including, without limitation, the Motors Business) and (ii) [Lear] has received actual notice of claim with respect to such Environmental Liability prior to the UTA Closing Date . . . .

Johnson Agreement § 2.7 (emphasis added).

Johnson Electric interprets Section 2.7(a) as defining "Retained Liabilities" to include any environmental liability relating to an operation discontinued as of March 16, 1999 or any assets no longer used by UTA or any of the Subsidiaries in the conduct of the Motors Business as of March 16. It interprets Section 2.7(b) as applying to environmental liabilities for which actual notice of a "claim" had been received prior to March 16, 1999. According to Johnson Electric, this turns on whether any contamination giving rise to liability was as a result of "environmental matters for which there was prior notice." Thus, in short, Johnson Electric maintains that a

8

"Retained Liability" would be any contamination that was the result of "discontinued operations as of March 1999," "assets no longer used" as of March 1999, or environmental matters for which there was prior notice. Johnson Electric argues that determining whether the contamination in question was a "Retained Liability" is for the Mississippi Action, and the issue of indemnification necessarily turns on the result in that action.

According to Lear, Section 2.7(a) is not even applicable to the "Retained Liability" question in this case. Lear asserts that Section 2.7(a) does not refer to the Motors Business, which is the subject of the Mississippi Action, or any other business of UTA that was operational as of the UTA Closing Date. Rather, Lear claims that the "discontinued operation" clause of Section 2.7(a) refers to abandoned parcels of property that constituted discontinued operations, and assets no longer used, of Nevada Bond as of the UTA Closing Date. Lear claims that these pieces of property were not part of the Motors Business and did not fall under the ambit of Lear's "Retained Liabilities." Instead, because Lear maintains that the Johnson Agreement tracked the UPA Agreement it entered into with Nevada Bond, this section was meant to only apply to these abandoned properties constituting "Retained Liabilities" under the UPA Agreement for Nevada Bond. Moreover, as for the "assets" clause of Section 2.7(a), Lear claims that it is not possible for the Motors Business to involve "assets no longer, as of the UTA Closing Date, used by UTA or any of the Subsidiaries in the conduct of the Motors Business," although it fails to explain why.

Lear contends that the question of whether an environmental claim against the Motors Business is a "Retained Liability" in the Mississippi Action is governed only by Section 2.7(b). Lear contends that Section 2.7(b) provides that an environmental liability is a "Retained

9

Liability" only if "[Lear] has received actual notice of claim with respect to such Environmental Liability prior to the UTA Closing Date." Lear maintains that the "first paragraph of Section 2.7 makes clear that its subsection (b) refers to a 'claim [that] is asserted prior to the Closing date . . .'" Thus, Lear maintains that because the Mississippi Action was filed after the UTA Closing Date, it is not a "Retained Liability."

While the Johnson Agreement is far from a model of clarity, it is not the labyrinth the parties make it out to be. Contrary to Lear's argument, it is not clear from the contract whether the Mississippi Action will relate to a "Retained Liability" or a "Covered Liability" under the terms of the Johnson Agreement. Indeed, Lear's interpretation of Section 2.7(a) is puzzling insofar as Lear first asserts that Section 2.7(a) does not reference the Motor Business, even though the last portion of the section specifically reads "in the conduct of the Motors business." Lear argues that Section 2.7(a) refers to abandoned parcels of property that were "discontinued operations" and assets no longer used by Nevada Bond, even though the Section makes no mention of abandoned parcels of property and, in fact, the agreement specifically separately defines "Real property."

A plain reading of Section 2.7(a) is that a "Retained Liability" could be either (1) relating to an operation discontinued as of March 16, 1999, or (2) assets no longer used in the conduct of the Motors Business by UTA or any of the Subsidiaries as of March 16, 1999. Contrary to Lear's suggestions, Section 2.7 does not give the court the ability to determine indemnification rights based on the contract alone and regardless of the underlying facts. Lear's claim is based more on its self-proclaimed "pass through" status in this transaction under which it believes one of either Johnson Electric or Nevada Bond must be liable for indemnification. While the court is

10

presented with no reason to doubt this, determining which of the two must indemnify Lear depends on resolution of the underlying issues in the Mississippi Action, *i.e.*, what caused the alleged contamination and the development of the facts necessary to determine whether such contamination was either a "Retained Liability" or a "Covered Liability." Until those underlying facts are developed, the court simply cannot say who is liable for indemnification. Therefore, the application of the general rule that suit seeking a declaratory judgment for indemnification rights is not ripe until liability has been determined is properly applied in this case. Lear's Count I claim against Johnson Electric is dismissed without prejudice.

## B.  Duty to Defend

Lear also maintains that the Johnson Agreement includes a duty on the part of Johnson Electric to defend Lear in the Mississippi Action. Johnson Electric argues that the Johnson Agreement only defines duties to indemnify and contains no duty to defend. Johnson Electric, therefore, asks the court to dismiss the duty to defend claim for failure to state a claim under Rule 12(b)(6).[3] As the duty to defend is a "creature of contract," *International Envtl. Corp. v. National Union Fire Ins. Co. of Pittsburgh*, 843 F. Supp. 1218, 1225 (N.D. Ill. 1993), the court must once again examine the provisions of the Johnson Agreement to determine whether it contains a duty to defend. *See also, CSX Transp., Inc. v. Chicago and Northwestern Transp. Co. Inc.*, 62 F.3d 185, 192 (7th Cir. 1995) (finding no duty to defend where contract "d[id] not impose a duty to defend . . . as an aspect of indemnification.").

---

[3]The motion to dismiss the duty to defend claim is brought under Rule 12(b)(6) and not Rule 12(b)(1). There is no question that the duty to defend claim is currently ripe for adjudication. *E.g., Insurance Co. of the W. v. County of McHenry*, No. 02 C 2291, 2002 WL 1803743, at *4 (N.D. Ill. Aug. 6, 2002) ("[A] request for a declaratory judgment regarding an insurer's duty to defend the insured is considered to be ripe for adjudication during the pendency of a lawsuit implicating that duty.").

11

Both parties agree that the relevant portion of the statute is Section 10.4, which provides,

> If a claim by a third party is made against a Seller Indemnified Party or a Buyer Indemnified Party (an "Indemnified Party"), and if such Indemnified Party intends to seek indemnity with respect thereto under this Article X, such Indemnified Party shall promptly notify the indemnifying party of such claims. The failure to provide notice shall not result in a waiver of any right to indemnification hereunder except to the extent the indemnifying party is actually materially prejudiced by such failure. The indemnifying party <u>shall have 30 days after receipt of such notice to undertake, conduct and control, through counsel of its own choosing and at its own expense, the settlement or defense thereof</u>, and the Indemnified Party shall cooperate with it in connection therewith; provided that (a) the indemnifying party shall permit the Indemnified Party to participate in such settlement or defense through counsel chosen by such Indemnified Party; provided that the fees and expenses of such counsel shall be borne by such Indemnified Party and (b) the indemnifying party shall promptly assume and hold such Indemnified Party harmless from and against the full amount of any Covered Liability resulting therefrom. So long as the indemnifying party is reasonably contesting any such claim in good faith, the Indemnified Party shall not pay or settle any such claim. Notwithstanding the foregoing, the Indemnified Party shall have the right to pay or settle any such claim; provided that in such event it shall waive any right to indemnity therefor by indemnifying party. <u>If the indemnifying party does not notify the Indemnified Party within 30 days after the receipt of the Indemnified Party's notice of a claim of indemnity hereunder that it elects to undertake the defense thereof, the Indemnified Party shall have the right to contest, settle or compromise the claim but shall not thereby waive any right to indemnity therefor pursuant to this Agreement.</u> Indemnifying party shall not, except with the consent of the Indemnified Party, enter into any settlement that does not include as a unconditional term thereof the giving by the person or persons asserting such claim to all Indemnified Parties of unconditional release from all liability with respect to such claim or consent to entry of any judgment.

Johnson Agreement § 10.4 (emphasis added).

Lear makes two arguments in favor of its claim that Johnson Electric has a duty to defend. First, Lear argues that the agreement unambiguously states that Johnson Electric has a duty to defend, and cites the language as follows, "[Johnson Electric] shall . . . undertake, conduct and control, through counsel of its own choosing and at its own expense, the settlement or defense thereof . . . ." As Johnson Electric points out, however, the full cite above provides

12

that "[t]he indemnifying party shall *have 30 days after the receipt of such notice to* undertake, conduct and control, through counsel of its own choosing and at its own expense, the settlement or defense thereof." (emphasis added). The entire citation certainly imputes a very different meaning from Lear's interpretation. Moreover, Johnson Electric points to a later portion of Section 10.4 which provides that "If the indemnifying party does not notify the Indemnified Party within 30 days after the receipt of the Indemnified Party's notice of a claim of indemnity hereunder that it *elects* to undertake the defense thereof, the Indemnified Party shall have the right to contest, settle, or compromise the claim but shall not thereby waive any right to indemnity therefor pursuant to this Agreement." (emphasis added).

According to Johnson Electric, these provisions allow the indemnifying party (Johnson Electric) to "elect" or not "elect" to "undertake the defense," thereby proving only the option of defending a Covered Liability. Johnson Electric argues that the "shall" language only requires that any such election be made within the 30-day period and that any "option" to elect to take the defense establishes no mandatory "duty to defend" under the contract. *E.g., Outboard Marine Corp.* v. *Liberty Mut. Ins. Co.*, 536 F.2d 730, 736 (7th Cir. 1976) ("The reservation of the option to 'associate' in the defense imposes no duties when that option is not exercised. Even the right to assume control of the defense carries with it no duty to participate in the defense."); *Insurance Co. of the W.* v. *County of McHenry*, No. 02 C 2291, 2002 WL 1803743, at *2 (N.D. Ill. Aug. 6, 2002) ("In short, the policy does not impose a duty to defend; rather, it gives ICW the option to participate in the County's defense."); *Save Mart Supermarkets* v. *Underwriters at Lloyd's London*, 843 F. Supp. 597, 603 (N.D. Cal. 1994) ("More importantly, the [defendants'] explicit

13

*option* to join in the defense directly contradicts any possible *duty* to join in the defense.") (emphasis in original).

Lear's second argument in favor of a duty to defend centers around the definition of the term "Covered Liability." Lear argues that the phrase "Covered Liability" as defined in the Johnson Agreement includes

> any and all debts, losses, liabilities, claims, damages, fines, penalties, obligations, payments . . . costs and expenses (including, without limitation, costs and expenses of investigation and fees and disbursements of counsel . . .), without limitation, any of the foregoing arising under, out of or in connection with any Environmental Liabilities or any Action . . . .[4]

Lear believes that the "extensive nature" of these definitions demonstrate that the parties contemplated that Johnson Electric would be responsible for both indemnification and defending any action that would constitute a Covered Liability. In response, Johnson Electric claims that these defined terms set forth only the liabilities for which indemnification may ultimately be required, and that it is clear that an obligation to indemnify costs does not create an affirmative "duty to defend." *See, e.g., Jones v. S. Marine & Aviation Underwriters, Inc.*, 888 F.2d 358, 362 (5th Cir. 1989) ("We do not read this [clause stating that an insurance company will pay the costs of defense] to impose a duty to defend upon Underwriters."); *Agnew v. Board of Ed.*, No. 97 C 5993, 1998 WL 792487, at *4 (N.D. Ill. Nov. 6, 1998) (noting that plaintiff had "failed to cite any authority supporting his theory that indemnification is synonymous with the duty to defend.").

---

[4]Lear also cites to the definition of "Environmental Liabilities," in the Johnson Agreement, which includes "any and all claims, demands, penalties, fines, liabilities, settlements, damages, losses, costs and expenses (including, without limitation, reasonable attorney's and reasonable consultants' fees . . . court costs and litigation expenses).

14

The agreement does not specifically state that there is a duty to defend, but also does not specifically state that there is not one. *Cf. Valassis Communications, Inc. v. Aetna Cas. & Sur. Co.*, 97 F.3d 870, 876 (6th Cir. 1996) (contract included language stating "[n]othing in this paragraph is intended, nor shall it be construed, to create any duty to defend on the part of . . . ."). A plain reading of the full portions of Section 10.4, however, illustrates that no duty to defend could be construed from the Johnson Agreement. Section 10.4 clearly shows that Johnson Electric has 30 days after receiving notice of a claim from Lear to take control of the settlement or defense of the claim. As the agreement expressly provides, if Johnson Electric does not notify Lear within 30 days that it "elects" to undertake the defense, Lear could contest, settle or compromise the claim. If there was a mandatory duty to defend, it is difficult to imagine how Johnson Electric would have the liberty to "elect" not to undertake take it, or how Lear could "contest, settle or compromise the claim." No where does the Johnson Agreement mandate that a duty to defend exists. Nor does Lear provide support for its notion that the payment of costs transforms the indemnity provisions into a duty to defend. A plain reading of the Johnson Agreement only suggests that Johnson Electric had the option to defend Lear. Because the Johnson Agreement expressly allows Johnson Electric to "elect" to take the defense and no where expressly notes that a duty to defend exists, Lear's claim fails as a matter of law.

## CONCLUSION

For the reasons stated above, Johnson Electric's motion to dismiss is granted [#12]. The court dismisses the Count I duty to indemnify claim without prejudice under Rule 12(b)(1). The Count II duty to defend claim is dismissed with prejudice under Rule 12(b)(6).

ENTER: /s/ Joan H. Lefkow
JOAN HUMPHREY LEFKOW
United States District Judge

Dated: May 30, 2003